UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
TRUSTEES OF THE PLUMBERS LOCAL
UNION NO. 1 WELFARE FUND,
ADDITIONAL SECURITY BENEFIT FUND,
VACATION & HOLIDAY FUND, TRADE
EDUCATION FUND, AND 401(K) SAVINGS
PLAN, TRUSTEES OF THE PLUMBERS
& PIPEFITTERS NATIONAL PENSION FUND
and TRUSTEES OF THE INTERNATIONAL
TRAINING FUND,

                        **REPORT & RECOMMENDATION**
       Plaintiffs,                    **20 CV 1189 (ARR)(LB)**

    -against-

J.& A. CONTRACTORS CORP. and
VITO LABARBERA,

       Defendants.
----------------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

      Plaintiffs, Trustees of the Plumbers Local Union No. 1 Welfare Fund, Additional

Security Benefit Fund, Vacation & Holiday Fund, Trade Education Fund, the 401(k) Savings

Plan (the "Local 1 Funds"), Trustees of the Plumbers & Pipefitters National Pension Fund (the

"PPNPF"), and Trustees of the International Training Fund (the "ITF") (together with the

PPNPF, the "National Funds") (the Local 1 Funds and National Funds collectively referred to

herein as the "Funds"), bring this action against defendants, J. & A. Contractors Corp. ("J&A")

and Vito LaBarbera ("LaBarbera"), pursuant to the Employee Retirement Income Security Act

of 1974, as amended, 29 U.S.C. § 1001 et seq. ("ERISA"), and the Labor Management Relations

Act of 1947, as amended, 29 U.S.C. § 185 et seq. ("LMRA").

      Despite proper service of the summons and complaint, defendants have failed to plead or

otherwise defend this action. Plaintiffs now move for a default judgment pursuant to Rule

55(b)(2) of the Federal Rules of Civil Procedure. The Honorable Allyne R. Ross referred plaintiffs' motion for a default judgment to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that plaintiffs' motion for a default judgment should be granted.

## BACKGROUND[1]

Plaintiffs, the Local 1 Funds, are employer and employee trustees of multiemployer labor-management trust funds, operated pursuant to various collective bargaining agreements in accordance with section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). Compl. ¶ 4, ECF No. 1. The Local 1 Funds are employee benefit plans within the meaning of Section 3(3) of ERISA. Id. Plaintiff, Plumbers Local Union No. 1 Welfare Fund (the "Welfare Fund"), is the designated Collection Agent for Union No. 1 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada (the "Union") and the Plumbing Industry Promotion Fund of New York City. Id. Plaintiff, the PPNPF, are employer and employee trustees of a multiemployer employee pension benefit plan as those terms are defined in Sections 3(2) and 3(37) of ERISA. Id. ¶ 6. Plaintiff, the ITF, are employee and employer trustees of a multiemployer employee welfare benefit plan as those terms are defined in Sections 3(2) and 3(37) of ERISA. Id. ¶ 7. Defendant, J&A, is a New York for-profit company with its principal place of business in Brooklyn, New York. Id. ¶ 8. Defendant LaBarbera is a principal of J&A. Id. ¶ 9.

---

[1] The facts are drawn from the uncontested allegations in plaintiffs' complaint and documents incorporated by reference and are taken as true for the purposes of deciding this motion. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 108 (2d Cir. 1997) (deeming all well-pleaded allegations in a complaint admitted on a motion for a default judgment); Gesualdi v. Interstate Masonry Corp., No. 12-CV-0383(NGG)(VMS), 2014 WL 1311709, at *3 n.1 (E.D.N.Y. Mar. 28, 2014) (incorporating relevant CBAs by reference into the complaint).

Defendant J&A was a party to a collective bargaining agreement ("CBA"). Id. ¶ 10. The CBA requires J&A to: (1) make "specified hourly contributions to the Funds in connection with all plumbing work and other specified work performed on behalf of J&A within the five boroughs of the City of New York" ("Covered Work") (2) submit monthly reports to the Funds detailing the number of hours of Covered Work performed by employees, (3) remit specified amounts, including union dues withheld from its employees' pay, to the Welfare Fund,[2] and (4) furnish its books and payroll records when requested by the Funds for auditing purposes. Id. ¶¶ 11-13, 16.

The CBA further states that "[t]he Employer agrees to be bound by the provisions of the Trust Agreements pertaining to the Pension [fund]." Id. ¶ 14; J&A Signature Pages, ECF No. 24-1. Pursuant to the Trust Agreements, the Funds are permitted to establish policies, rules, and procedures for the collection of delinquent benefit contributions to the Funds. Compl. ¶ 15. Under these policies, employers whose contributions are delinquent are liable for delinquent contributions, interest on those amounts, liquidated damages as a percentage of the principal amount due, attorneys' fees, audit fees, and other collection costs. Id. ¶¶ 19–22.

Plaintiffs' complaint alleges that J&A is liable to the Local 1 Funds for: (1) $36,902.91 in contributions for Covered Work performed during the period January 1, 2019 through November 20, 2019; (2) $2,772.78 in contributions for the period January 1, 2015 through December 31, 2015 pursuant to a 2015 Audit (the "Audit) and (3) $473.57 in interest pursuant to the Audit. Id. ¶ 41. Plaintiffs allege that J&A owes the 401(k) Savings Plan $6,583.09 in estimated 401(k) Salary Deferrals for the period March 11, 2019 through November 11, 2019 and $2,291.52 in

---

[2] Per the CBA, employers are required to submit contributions and remittance reports by the 20th day following the end of each calendar month. Compl. ¶ 17. Per the 401(k) Savings Collection Policy, employers are required to remit 401(K) Salary Deferrals and the supporting remittance report within seven business days after the end of the payroll period. Id. ¶ 18.

3

estimated 401(k) Salary deferrals for the period November 18, 2019 through February 17, 2020, plus interest on the unpaid contributions. Id. ¶¶ 28-29. Plaintiffs allege that J&A owes the PPNPF $6,363.84 in contributions for the period April through November 2019 plus interest on the unpaid contributions and liquidated damages and owes the ITF contributions of $97.16 for the period April through November 2019 plus interest on the unpaid contributions and liquidated damages. Id. ¶31.

Plaintiffs also allege that defendant LaBarbera is a fiduciary of J&A and unlawfully diverted and misused J&A's assets for purposes other than remitting contributions to the Funds in violation of his fiduciary duties. Id. ¶¶ 50-61. Plaintiffs allege that LaBarbera is thus personally liable to the Funds for all such loses under section 409(a) of ERISA, 29 U.S.C. § 1109(a). Id. ¶¶ 54, 61.

Since this action commenced, Plaintiffs allege that J&A has failed to submit remittance reports to the Funds for the period February 2020 through April 2021 and failed to submit 401(k) Salary Deferral remittance reports for the period February 3, 2020 through May 11, 2021. Mem. of Law in Supp. of Pls.' Mot. for Default J. ("Pls.' Mem.") 8-9, ECF No. 28.

## PROCEDURAL HISTORY

Plaintiffs filed the instant action on March 4, 2020, ECF No. 1, and served the summons and complaint on defendant J&A and defendant LaBarbera, ECF No. 6-7. Defendants have failed to answer or otherwise respond. The Clerk of Court noted entry of defendants' default, ECF Nos. 10–11, and plaintiffs moved for a default judgment. ECF Nos. 12-17. As plaintiffs' submissions contained several discrepancies, I scheduled an inquest to permit plaintiffs to address the Court's concerns. See Electronic Order dated May 7, 2021. Plaintiffs requested permission to file an

amended motion correcting the deficiencies noted by the Court. ECF No. 21. I granted plaintiffs' application and cancelled the inquest. See Electronic Order dated May 11, 2021. Plaintiffs have filed the instant amended motion for a default judgment. ECF Nos. 23 through 28.

## DISCUSSION

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for a plaintiff to obtain a default judgment. Priestly v. Headminder, Inc., 647 F.3d 497, 504 (2d Cir. 2011). First, "[w]hen a party against whom judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after a default has been entered against a defendant and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on a plaintiff's motion, enter a default judgment. Fed. R. Civ. P. 55(b)(2). Upon the completion of these two steps, the court must determine if the plaintiff's well-pleaded complaint establishes a legitimate cause of action. See Greathouse v. JHS Sec. Inc., 784 F.3d 105, 116 n.17 (2d Cir. 2015).

In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95–96 (2d Cir. 1993) (citing Traguth v. Zuck, 710 F.2d 90, 94 (2d Cir. 1983)); Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981)). "Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." Finkel v. Universal Elec. Corp., 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013) (citing Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice")).

On a motion for a default judgment, the Court "deems all the well-pleaded allegations in the pleadings to be admitted." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997). Even though the pleadings are deemed admitted, the Court still has a "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." Rolls-Royce PLC v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). Though the Court must draw all reasonable inferences from the facts in plaintiffs' favor to determine defendant's liability, see Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009), it "need not credit the plaintiffs' legal conclusions." Priestly, 647 F.3d at 504.

If the unchallenged facts establish defendant's liability, the Court then determines the amount of damages due. Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citing Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111). In evaluating defendant's liability, the Court is limited to the four corners of the complaint. Rolls-Royce PLC, 688 F. Supp. 2d at 153. The Court is not so restricted in determining damages, which may be calculated based on documentary evidence, affidavits, or evidence presented at a hearing on damages. See Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111.

## I.      Defendants' Liability under ERISA and the LMRA

### A. Defendant J&A

The factual allegations in plaintiffs' complaint establish defendant J&A's liability under ERISA and the LMRA. Section 515 of ERISA provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. "ERISA vests the Court with jurisdiction over civil actions brought by fiduciaries of employee benefit plans to enforce provisions of such plans." Trs. of the Local 7 Tile Indus. Welfare Fund v. City Tile, Inc., No. 10-CV-322, 2011 WL 917600, at *1 (E.D.N.Y. Feb. 18, 2011), Report and Recommendation adopted by 2011 WL 864331 (E.D.N.Y. Mar. 10, 2011).

Here, plaintiffs allege that defendant J&A is an "employer within the meanings of sections 3(5) and 515 of ERISA, 29 U.S.C. §602(5) and 1145," compl. ¶8, and that the Funds are "employee benefit plans," "multiemployer employee pension benefit plan[s]," and "multiemployer welfare employee benefit plan[s]," id. ¶¶ 4-7. Plaintiffs allege that defendant was obligated to make contributions to the plaintiff plans pursuant to the CBA and that defendant failed to make all of the required contributions. Id. ¶¶ 20–32, 40. These factual allegations are sufficient to establish defendant's liability under ERISA for the unpaid contributions.

Section 301(a) of the LMRA gives the Court jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce[.]" 29 U.S.C. § 185(a). Plaintiffs allege that the Union is a labor organization pursuant to the LMRA and that defendant was obligated to make specified hourly contributions, remit 401(k) Salary Deferrals, and supporting remittance reports pursuant to the CBA. Compl. ¶¶ 5, 11-18. The Union's uncontested allegations are sufficient to establish liability under the LMRA as to the unpaid contributions and 401(k) Salary Deferrals. See Finkel v. Allstar Elec. Corp., No. 11-CV-3222(KAM)(RER), 2013 WL 4806951, at *4 (E.D.N.Y. Sept. 9, 2013) ("Plaintiff has established liability under Section 301 of the LMRA because it sufficiently pleads that [defendant] failed to remit the Required Contributions in accordance with

their obligations under the CBAs."); cf. The Annuity, Pension, Welfare, Training and Labor Mgmt. Coop. Tr. Funds of the Int'l Union of Operating Eng'rs Local 14-14 B, AFL-CIO v. BKS-NY, LLC, No. 18 Civ. 0256(LDH)(VMS), 2018 WL 4522103, at *4–5 (E.D.N.Y. Aug. 6, 2018) (recommending that the Court deny unpaid contributions to a political action committee as the CBA did not reference a political action committee payment obligation as to the specified plaintiff).

**B. Defendant LaBarbera's Liability**

The complaint also establishes defendant LaBarbera's liability under ERISA. Section 409(a) of ERISA provides:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a). "[A] fiduciary of an ERISA plan may be personally liable for a breach of a duty owed to the plan." Sullivan v. Marble Unique Corp., No. 10-CV-3582, 2011 WL 5401987, at *1 (E.D.N.Y. Aug. 30, 2011) (citing Finkel v. Romanowicz, 557 F.3d 79, 82 n.4 (2d Cir. 2009)) Report and Recommendation adopted by, 2011 WL 5402898 (E.D.N.Y. Nov. 4, 2011). Under ERISA, a fiduciary is a person who "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. §1002(21)(A).

Plaintiffs allege that defendant LaBarbera, as a principal of J&A, is a "fiduciary" as defined by ERISA because he "exercised operational control of J&A," "was responsible for

deciding whether to use assets in the possession of J&A to pay contributions to the Funds," and "was directly responsible for the failure of J&A to pay benefit contributions to the Funds." Compl. ¶¶ 50-54. Plaintiffs also allege that defendant "LaBarbera exercised control and/or discretionary authority over the disposition of the Funds' plan assets," "failed to discharge his duties" to the Funds, and that his actions "caused the Funds to suffer substantial monetary losses." Id. ¶¶ 53, 57, 59. These factual allegations are sufficient to establish defendant LaBarbera's liability under ERISA.

Plaintiffs' complaint sufficiently establishes defendants J&A and LaBarbera's liability under ERISA and the LMRA. Therefore, I respectfully recommend that the Court should grant plaintiffs' motion for a default judgment as to defendants' liability.

## II.    Damages

A defendant's default amounts to admission of liability for all well pleaded factual allegations in the complaint, except those relating to damages. Credit Lyonnais Sec. (USA), Inc., 183 F.3d at 155 ("Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true."); Greyhound Exhibitgroup, Inc. v. E.L.U.L Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) ("While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages."). To determine the amount of damages, the district court "may conduct hearings or make referrals," FED. R. CIV. P. 55(b)(2), but "[d]etailed affidavits and other documentary evidence can suffice in lieu of an evidentiary hearing." Chanel, Inc. v. Louis, No. 06-CV-5924(ARR)(JO), 2009 WL 4639674, at *4 (E.D.N.Y. Dec. 7, 2009) (citing Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991)).

See also Bricklayers Ins. & Welfare Fund v. McGovern & Co., LLC, No. 17-CV-6067(SJ)(ST),

2019 WL 2271942, at *3 (E.D.N.Y. Mar. 6, 2019) Report and Recommendation adopted as

modified by 2019 WL 1772399 (E.D.N.Y. Apr. 23, 2019); Bricklayers Ins. & Welfare Fund v.

Primo Brick, Inc., No. 11-CV-5742(FB)(LB), 2013 WL 2120338, at *4 (E.D.N.Y. Apr. 3, 2013)

Report and Recommendation adopted by 2013 WL 2120318 (E.D.N.Y. May 15, 2013). On a

motion for a default judgment, plaintiffs have the burden to prove damages to the Court with a

"reasonable certainty." Credit Lyonnais Secs. (USA), Inc.,183 F.3d at 155 (citing Transatlantic

Marine Claims Agency, Inc., 109 F.3d at 111)).

Plaintiffs request at least $205,806.88 in damages. Pls.' Mem. 5. In support of plaintiffs'

application for damages, plaintiffs submit many documents, including the following: the

declaration of Walter Saraceni, the Administrator of the Local 1 Funds (Saraceni Decl., ECF No.

24); the declaration of Toni C. Inscoe, the administrator of the PPNPF (Inscoe Decl., ECF No.

25); and the declaration of Patrick Moss, a partner at the auditing firm retained by plaintiffs

(Moss Decl., ECF No. 26). Each declaration is also accompanied by trade agreements, collection

policies, and documents demonstrating plaintiffs' calculations.  Reviewed together, plaintiffs'

submissions are sufficient for the Court to calculate damages with reasonable certainty. No

evidentiary hearing is needed.

Section 502 of ERISA sets forth the damages that are recoverable for an employer's

failure to remit contributions as required by Section 515 of ERISA. 29 U.S.C. §1132. Section

502 sets forth, in relevant part:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan-
>
> (A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of—
    (i) interest on the unpaid contributions, or
    (ii) liquidated damages provided for under the plan in an amount not in excess of 20
    percent (or such higher percentage as may be permitted under Federal or State law) of
    the amount determined by the court under subparagraph (A),

(C) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. §1132 (g)(2). For non-ERISA plans or other required contributions, plaintiffs'

damages are limited to those provided for in the CBA and trust agreements. See McGovern &

Co., LLC, 2019 WL 2271942, at *4; Finkel v. Triple A Grp., Inc., 708 F. Supp. 2d 277, 284

(E.D.N.Y. 2010).

      Plaintiffs also seek contributions and damages which accrued after they commenced this

action. Pls.' Mem. 17. Ordinarily, "[a] default judgment must not differ in kind from, or exceed

in amount, what is demanded in the pleadings." FED. R. CIV. P. 54(c). However, Courts may

award damages which accrued since the filing of the complaint when defendants were given

"notice that plaintiff might seek such damages." See Finkel, 708 F. Supp. 2d at 282 (citing King

v. STL Consulting, LLC, No. 05-CV-2719(SJ), 2006 WL 3335115, at *4-5 (E.D.N.Y. Oct. 3,

2006)). Here, the complaint states that plaintiffs seek "any additional delinquent benefit

contributions, interest, liquidated damages, and attorney's fees determined to be due according to

the CBA for any weeks that are unpaid as of the date judgment is entered and thereafter." Compl.

¶¶ 31, 41. This language provides the required notice and the Court may properly award damages

which accrued after the complaint was filed. See Finkel, 708 F. Supp. 2d at 282 ("[T]he demand

for contributions that became due after suit was filed is proper because the complaint includes a

request for unpaid contributions that might become due and owing during the litigation.").

**A. Local 1 Funds**

**1. Unpaid Contributions – January 2019 through November 2019**

**a. Principal Amount Due**

Plaintiffs argue that, pursuant to 29 U.S.C. § 1132(g)(2)(A), they are entitled to recover unpaid contributions that defendant was required to make, but failed to pay, in accordance with the CBA. Compl. ¶ 39; Pls.' Mem. 17.

The Local 1 Funds seek $36,109.48 in delinquent contributions for the period January through November 2019 based on the remittance reports submitted by J&A to the Funds. Pls.' Mem. 17; Saraceni Decl. ¶ 18. The Court has conducted its own review of the remittance reports submitted by plaintiffs for this time period, ECF No. 24-11, and finds that the records submitted only support an award of $35,547.36[3] in delinquent contributions for the period January through November 2019.[4] The following table summarizes the amount owed in delinquent contributions as supported by the filed remittance reports:

---

[3] The Court notes that the Plaintiffs initially sought $36,902.91 in delinquent contributions in the Complaint. Compl. ¶23. This award is not supported by the record.

[4] The Court notes that the affidavit of the administrator of the Local 1 Funds, Saraceni Decl. ¶18, ECF No. 24, and a separate accounting document, ECF No. 24-12, both assert that the outstanding contributions total $36,109.48. However, the underlying remittance reports, ECF No. 24-11, do not support this total. The remittance reports support the finding that a total of $35,547.36 in unpaid contributions is due.

| Delinquent Local 1 Funds Contributions<br>January 2019 – November 2019[5] | | |
|---|---|---|
| Period Ending | Remittance Receipt# | Amount Due |
| January 31, 2019 | 572446 | 2,736.56 |
| February 28, 2019 | 566196 | 11,231.78 |
| March 31, 2019 | 566205 | 2,311.35 |
| April 30, 2019 | 573594 | 3,522.93 |
| May 31, 2019 | 582255 | 2,862.38 |
| June 30, 2019 | 608586 | 3,522.93 |
| July 31, 2019 | 622680, 622703 | 2,721.44[6] |
| August 31, 2019 | 633274 | 936.81 |
| September 30, 2019 | 638291 | 3,412.67 |
| October 31, 2019 | 666948 | 1,070.64 |
| November 30, 2019 | 683601, 683602 | 1,217.87 |
| | | |
| Total Due | | $35,547.36 |

ECF No. 24-11. Accordingly, I recommend that the Court should order defendants to pay Local 1 Funds $35,547.36 in unremitted contributions for the period January 2019 through November 2019.

**b. Interest**

Plaintiffs also seek interest on the unremitted contributions. Pls.' Mem 17. The amount of interest and the method of calculation is specified in the CBA and the Local 1 Funds' Collection Policy. Id. 17 n.7; Collection Policy Art. II, ¶ 6, ECF No. 24-9; CBA Art. 2, ECF 24-3; Saraceni Decl. ¶ 18. These governing documents state that interest on unremitted contributions is assessed "at the rate of ten percent (10%) per annum (calculated from the day following the Due Date and compounded annually)." Collection Policy Art. II, ¶ 6, ECF No. 24-9. Plaintiffs calculated the

---

[5] The Court's calculation of the amount due for the months July and October differs from the amounts calculated by plaintiffs. Plaintiffs only provide the remittance reports for the period January through November 2019 and fail to explain how they calculated the total due for each month. When plaintiffs state the total due for each month for the purpose of calculating the amount of interest owed, see ECF No. 24-12, they state that $2,453.78 is due for July and $1,900.42 is due for October. These amounts are not supported by the remittance reports.

[6] Although plaintiffs provide a remittance report for July 2019 showing that $2,453.78 is due, their calculations fail to account for a second remittance report for July 2019 showing that an additional $267.66 is due. The Court added these amounts together and obtained $2,721.44.

interest due on each monthly contribution. ECF No. 24.12. However, as noted above, the Court's calculation of the delinquent amounts differs from plaintiffs' calculation.

Plaintiffs determined the interest due for each month by multiplying the total contribution due for each month by 10%, dividing by 365, and then multiplying that number by the number of days between the contribution's due date and June 8, 2021.[7] This method of calculation has been relied on by other Courts. See e.g., Bricklayers Ins. & Welfare Fund v. Verse Inc., No. 12-CV-4271(FB)(JMA), 2013 WL 4883966, at *7 n.3 (E.D.N.Y. Sept. 11, 2013). However, for the sake of practicality, the Court will calculate the total interest due on the delinquent contributions from a single reasonable midpoint in the delinquency period up until the date of this Report. See Finkel, 708 F. Supp. at 287 (citing N.Y. C.P.L.R. 5001(b)) (Recommending using a midpoint as a "practical way of calculating interest"). Here, the delinquency period is from February 20, 2019 through December 20, 2019.[8] Therefore, a reasonable midpoint is July 22, 2019. Employing this method, the Court multiplies the total delinquency $35,547.36 by 10%, divides by 365, and multiplies by the number of days between July 22, 2019 and the date of this Report. The result is $8,084.20. This amount will increase by 9.74 ((35,547 x 10%) divided by 365) each day until judgment is entered. See Trustees of the Pavers & Road Builders Dist. Council Welfare v. Cole Partners, Inc., No. 13-CV-07103(NGG)(RML), 2015 WL 861717, at *4 (E.D.N.Y. Feb. 27, 2015).

Accordingly, plaintiffs should be awarded $8,084.20 in interest on unpaid contributions for the period January through November 2019 plus $9.74 for every day between the date of this Report and the entry of judgment. See Annuity, Pension, Welfare, Training and Labor Mgmt.

---

[7] Although plaintiffs only request interest through June 8, 2021, the Court notes that they may be entitled to interest through the date of the judgment.

[8] The Collection Policy states that "[c]ontributions and supporting remittance report (sic)…are due by the twentieth (20th) day following the end of each calendar month…." Collection Policy Art. II, ¶ 1, ECF No. 24-9.

Cooperation Trust Funds of the Int'l Union of Operating Eng'rs v. Costal Env't Grp. Inc., No. 18 Civ. 5773(AMD)(ST), 2019 WL 4603805, at *11 (E.D.N.Y. Sept. 5, 2019) (citing Bedaise v. Mr. Z Towing, Inc., No, 13 Civ. 5453 (CLP), 2017 WL 1135727, at *50-51 (E.D.N.Y. Mar. 24, 2017)) Report and Recommendation adopted by 2019 WL 4602851 (E.D.N.Y. Sept. 23, 2019).

### c.    Liquidated Damages

According to the Collection Policy, the Local 1 Funds are entitled to 20% of the total delinquency as liquidated damages. Pls.' Mem. 17; Saraceni Decl. ¶ 18; Collection Policy Art. II ¶ 6, ECF No. 24-9. When applied, this yields an award of $7,109.47 ($35,547.36 x 20%). Accordingly, the Local 1 Funds Should be awarded $7,109.47 in liquidated damages.

### d.    Administrative Fee

The Collection Policy also provides for an administrative fee of $100 for each failure to pay monthly contributions. Collection Policy Art. II ¶ 6, ECF No. 24-9. Here, defendants failed to pay contributions from January through November 2019, a period of 11 months. Accordingly, plaintiffs should be awarded an administrative fee of $1,100.


### 2.    Estimated Contributions - February 2020 through April 2021

### a.    Projected Contribution Amount

Plaintiffs also seek estimated contributions of $39,680.85 for the period February 2020 through April 2021 because defendants have failed to provide remittance reports for that time period.[9] Pls.' Mem. 17; Saraceni Decl. ¶ 22. According to plaintiffs, the Collection Policy

---

[9] Plaintiffs have not stated whether contributions were provided for December 2019 through January 2020. Although plaintiffs only seek to recover estimated contributions for the period February 2020 through April 2021, Pls. Mem. 17, they state that the last three months for which they received reports are September 2019 through November 2019. Saraceni Decl. ¶ 22. Therefore, the Court surmises that defendants failed to make contributions for December 2019 and January 2020.

provides that the Local 1 Funds may project "the delinquency by using the average of the monthly payments based on reports actually submitted by J&A for the last three months for which reports were actually submitted." Saraceni Decl. ¶ 22. However, plaintiffs' calculation of estimated contributions is without record support. Plaintiffs state that they calculated the amount due by taking the average of the last three months for which remittance reports were received: September, October, and November 2019. Id. In calculating the average, plaintiffs claim the following: the September 2019 report shows contributions of $4,817.89; the October report shows contributions of $1,900.42; and the November report shows contributions of $1,217.87. Id. The average of these sums is $2,645.39 (($4,817.89 + $1,900.42 + $1,217.87)/3). Plaintiffs then multiplied $2,645.39 by 15 (the number of months for which they seek contribution) to claim $39,680.85. Id. However, plaintiffs' calculation relies on incorrect figures for the last three months for which remittance reports were submitted.[10] The Court cannot rely on plaintiffs' numbers and must conduct its own calculations.

There is also a troubling tension between plaintiffs' representation of the Collection Policy's terms, see id., and the language of the policy itself, Collection Policy Art. IV, ¶ 9, ECF No. 24-9. The policy states:

> Where an employer is two or more months delinquent in making its Contributions and has not submitted remittance forms showing the employees who worked for him and the hours worked, the Collections Subcommittee may project as the amount of the delinquency the greater of (a) the average of the monthly payments based on reports actually submitted by the employer for the last (3) months for which *payments and reports* were submitted or (b) the average of the monthly payments based on reports actually submitted by the Employer for the last twelve (12) months for which *payments and reports* were submitted.

---

[10] This error is troubling because plaintiffs rely on inconsistent amounts for the present calculation and the delinquent contributions owed for the period January 2019 through November 2019. Compare ECF No. 24-12 with Saraceni Decl. ¶ 22.

Id. (emphasis added). The policy clearly states that the projection should be based on months for which payments and reports were submitted but plaintiffs' calculations rely on three months for which only reports - not payments - were submitted. Not only were payments not submitted, but plaintiffs' application, as discussed above, requests recovery of these unpaid contributions. Pls.' Mem. 17. Plaintiffs have not supplied remittance reports documenting paid contributions. In an effort to resolve this discrepancy, the Court examined prior cases where plaintiffs sought a default judgment against other defendants. See e.g., Trs. of the Plumbers Local Union No. 1 Welfare Fund v. N.Y. Pipeline Mech. Contractors, LLC, No. 09-CV-1349(JG)(JMA), 2010 WL 1221430, at *4 (E.D.N.Y. Mar. 23, 2010) Report and Recommendation adopted by Order (E.D.N.Y April 21, 2010); Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Daniel Weintraub & Assocs., Inc., No. 04-CV-2611(FB)(CLP), 2007 WL 4125453, at *6 (E.D.N.Y. Nov. 16, 2007).

　　　In Daniel Weintraub & Assocs., Inc., the Court was asked to award projected delinquent contributions and presented with agreement language similar to the Collection Policy in this instant matter. 2007 WL 4125453, at *6. However, the agreement in Daniel Weintraub stated that the projection could be based on "the average of the monthly payments or reports actually submitted by the Employer for the last three (3) months for which payments or reports were submitted…." See ECF No. 61-3 in Daniel Weintraub & Assocs., Inc., No. 04-CV-2611(FB)(CLP) (E.D.N.Y. Nov. 21, 2006) (emphasis added). In N.Y. Pipeline Mech. Contractors, LLC, the Court was asked to award projected contributions and presented with the same language at issue here which states that the projection should be based on "months for which payments and reports were submitted." 2010 WL 1221430, at *4 (citation omitted) (emphasis added). There, even though payments had not been made for some of the months for

which remittance reports were provided to the Court, the Court relied on those reports to first calculate a monthly average and then project the delinquent contributions. Id.

Although the Court notes this inconsistency between plaintiffs' proffered method of calculation and the language of the Collection Policy, the Court relies on the average of the amount stated in the three most recent remittance reports provided to conduct the required analysis. After conducting this analysis, the Court finds that the monthly average for the last three months for which reports were provided is 1,900.39[11] and therefore the amount defendants owe plaintiffs in estimated contributions is $28,505.85.[12] This amount was calculated by taking the average of the last three months for which remittance reports were provided and multiplying that number by fifteen months. Accordingly, I recommend that plaintiffs should be awarded $28,505.85 in estimated contributions for the period February 2020 through April 2021.

**b.   Interest on the Estimated Contributions**

Interest on the estimated contributions can be calculated by multiplying the total contribution due by 10%, dividing by 365, and then multiplying by the number of days between a reasonable midpoint and the date of this Report. See Cole Partners, Inc., 2015 WL 861717, at *4. The delinquency period spans March 20, 2020 through May 20, 2021; the Court finds October 19, 2020 to be a reasonable midpoint. The Court's calculations are as follows: ($28,505.85 x 10%)/365 multiplied by the number of days between October 19, 2020 and the date of this Report. The result is $2,928.75.

---

[11] The average contribution amount for the last three months was determined using the following formula: ($3,412.67 (Sept. 2019) + $1,070.64 (Oct. 2019) + $1,217.87 (Nov. 2019) divided by three).
[12] The monthly average of $1,900.39 x 15 months.

Accordingly, plaintiffs should be awarded $2,928.75 in interest for the period February 2020 through April 2021. The amount due will increase by $7.81 per day (($28,505.85 x 10%)/365)[13] until the entry of judgment.

**c. Liquidated Damages and Administrative Fees**

As described above, the Local 1 Funds are entitled to liquidated damages of 20% on the total amount of contributions due. <u>See</u> Collection Policy, Art. II, ¶ 6; ECF No. 24-9. The Local 1 Funds should be awarded $5,701.17 (28,505.85 x 20%) in liquidated damages.

Plaintiffs should also be awarded $1,500 in administrative fees ($100 administration fee x 15 months). <u>Id.</u>

**3. 401(k) Salary Deferrals**

Plaintiffs also claim that defendant J&A owes $7,211.51 in 401(k) Salary Deferrals for the period March 11, 2019 through November 11, 2019 and lost earnings of $593.83. Pls.' Mem. 18; Saraceni Decl. ¶ 19. Plaintiffs request $1,397.88 in interest on the 401(k) Salary Deferrals and $1,442.30 in liquidated damages. Pls.' Mem. 18.

The parties' 401(k) Collection Policy states that when the employer fails to pay "Participant Amounts within seven (7) business days after the end of the payroll period," the employer will be liable for the delinquent amounts, interest at the rate of 10% calculated from the due date, and liquidated damages. 401(k) Collection Policy Art. III.B, ¶ 2, ECF No. 24-10. The employer is also liable for lost earnings as calculated through the use of the "DOL VFCP Online Calculator." <u>Id.</u>

---

[13] The Court rounded its calculations to two decimal places.

**a. Unpaid 401(k) Salary Deferrals**

The Court has reviewed the remittance reports provided by plaintiffs, 401(k) Remittance Reports, ECF No. 24-13, and again finds that plaintiffs calculations are not accurate.[14] The Court conducted its own calculations relying on the remittance amounts stated in the reports provided, 401(k) Remittance Reports, ECF No. 24-13, and determined that the delinquency totals $7,493.95.

**i. Interest and Liquidated Damages**

Interest on the 401(k) Salary Deferrals is calculated "at the rate of ten percent (10%) per annum from the Due Date and compounded annually." 401(k) Collection Policy Art. III.B, ¶ 2, ECF No. 24-10. The Court calculates the interest due through the use of a reasonable midpoint during the delinquency period. See Finkel, 708 F. Supp. at 287. Here, the delinquency period is from March 18, 2019 through November 18, 2019.[15] See 401(k) Interest and Liquidated Damages Calculations 3/11/2019-11/11/2019, ECF No. 24-14. A reasonable midpoint is July 19, 2019. The Court calculates interest due as follows: (7,493.95 x 10%)/365 multiplied by the number of days between July 19, 2019 and the date of this Report. The result is $1,707.65. This amount will increase by $2.05 each day until the entry of judgment.

The 401(k) Collection Policy also provides for liquidated damages of 20% on the amount due. 401(k) Collection Policy Art. III.B, ¶ 2, ECF No. 24-10. Here, that amount is $1,498.79 ($7,493.95 x 20%).

---

[14] Plaintiffs' calculations rely on incorrect contribution amounts for the periods ending March 11, 2019 and November 11, 2019. Compare 401(k) Remittance Reports, ECF No. 24-13 with 401(k) Interest and Liquidated Damages Calculations 3/11/2019-11/11/2019, ECF No. 24-14.

[15] March 18, 2019 is the due date for the first missed 401(k) Salary Deferral payment and November 18, 2019 is the due date for the last 401(k) Salary Deferral payment. 401(k) Interest and Liquidated Damages Calculations 3/11/2019-11/11/2019, ECF No. 24-14.

### ii. Lost Earnings on 401(k) Salary Deferrals

"ERISA obligates a plan fiduciary in breach of his or her fiduciary duty 'to make good to such plan any losses to the plan resulting from each such breach….'" Trs. of the Plumbers Local Union No. 1 Welfare Fund v. Philip Gen. Constr., No 05-CV-1665(NG)(RLM), 2007 WL 3124612, at *12 (E.D.N.Y. Oct. 23, 2007) (quoting 29 U.S.C. § 1109(a)). This includes "lost earnings on amounts withheld" from employee wages. Id. The parties' agreement provides for the recovery of lost earnings through the use of the Department of Labor Voluntary Fiduciary Correction Program[16] ("DOL VFCP") Online Calculator, see 401(k) Collection Policy Art. II.B, ¶ 2, ECF No. 24-10, and plaintiffs provided the results they obtained when they used the calculator, see ECF No. 24-10, at 3. The DOL VFCP Calculator is intended to assist employers to comply with their obligations and to avoid Department of Labor enforcement actions by facilitating the repayment of debts. Philip Gen. Constr., 2007 WL 3124612, at *12. Although some Courts have relied on the DOL VFCP Online Calculator to determine lost earnings, other Courts have rejected the use of the calculator when plaintiffs are unable to explain how the results were obtained. Compare Philip Gen. Constr., 2007 WL 3124612, at *12 with Trs. of the Plumbers Local Union No. 1 401(k) Savs. Plan v. Best Plumbing Heating & Colling Inc., No. 12-CV-6848(ARR)(JO), 2017 WL 1194459, at *8 (E.D.N.Y. Mar. 3, 2017) Report and Recommendation adopted by 2017 WL 1194731 (E.D.N.Y. Mar. 30, 2017).

Although plaintiffs do not provide an explanation regarding how the DOL VFCP calculator functions, the Collection Policy does provide for its use, see 401(k) Collection Policy Art. II.B, ¶ 2, ECF No. 24-10, and the Court is able to access it online, see VFCP Calculator, U.S. Dept. of Labor, Emp Benefits Sec. Admin.,

---

[16] See Voluntary Fiduciary Correction Program, 65 Fed. Reg. 14164-01 (March 15, 2000).

https://www.askebsa.dol.gov/VFCPCalculator/WebCalculator.aspx (last visited Oct. 6, 2021).

The method of calculating lost earnings is also defined by federal regulation. See Voluntary

Fiduciary Correction Program, 65 Fed. Reg. 14164-01(Mar. 15, 2000). The Court finds that

using the DOL VFCP Online Calculator, as agreed to by the parties, is appropriate. See Philip

Gen. Constr., 2007 WL 3124612, at *12 (Using the DOL VFCP calculator to determine lost

401(k) earnings). However, as previously explained, plaintiffs' 401(k) Salary Deferral

contribution numbers are incorrect and so the Court must calculate lost earnings by utilizing the

DOL VFCP Online Calculator. Rather than calculating lost earnings for each contribution period,

the Court will calculate lost earnings from a reasonable midpoint through the date of this Report.

See Philip Gen. Constr., 2007 WL 3124612, at *12. The Court calculates lost earnings of

$683.49 from the midpoint of July 19, 2019 through the date of this Report.


**4. Estimated 401(k) Salary Deferrals**

Plaintiffs also seek to recover estimated 401(k) Salary Deferrals for the periods

November 18, 2019 through December 30, 2019 and February 3, 2020 through May 11, 2021.

Pls.' Mem. 18. The 401 Collection Policy provides that when an employer fails to submit

remittance forms the delinquency may be projected as:

> (a) the average of the monthly payments based on reports actually submitted by the
> employer for the last three (3) months for which payments and reports were submitted or
> (b) the average of the monthly payments based on reports actually submitted by the
> Employer for the last twelve (12) months for which payments and reports were
> submitted.

401(k) Collection Policy Art. V, ¶ 9, ECF No. 24-10.

Plaintiffs request $1,489.81 for the period November 18, 2019 through December 30,

2019 and $14,259.61 for the period February 3, 2020 through May 11, 2021. Pls.' Mem. 18 n.8;

22

Saraceni Decl. ¶¶ 21, 23. They calculated these amounts by "using the average monthly payments based on reports actually submitted by J&A for the last (9) weeks for which reports were actually submitted." Saraceni Decl. ¶¶ 21, 23. Plaintiffs' attempt to show their calculations in an exhibit appended to their motion papers. See Ex. O, 401(k) Projection Spreadsheet, ECF No. 24-15. However, this document reveals that plaintiffs determined the average weekly payment for the last 9 weeks for which remittance reports were provided ($212.83) and then applied that amount prospectively to each of the 74 weeks for which reports were never received. Using this method, $1,489.81 is due for the period ending November 18, 2019 through the period ending December 30, 2019 and $14,259.61 is due for the period ending February 3, 2020 through the period ending May 11, 2021. Although these calculations are correct, they do not align with the language of the Collection Policy which references the average of the *monthly* payments for the last three months for which remittance reports were provided. See 401(k) Collection Policy Art. V, ¶ 9, ECF No. 24-10. Why did plaintiffs determine weekly payments in conducting their calculations? Further impeding the Court's analysis of this issue, the Collection Policy does not specify how to proceed if remittance reports were provided for only part of a month. Is the Court to rely only on months for which the report is complete or engage in some different analysis? Plaintiffs' papers and the agreements provided are silent.

In an attempt to stay true to the language of the Collection Policy, the Court determines the monthly average for the prior three months for which remittance reports are available in full. Although the Collection Policy dictates that the projection amount shall be the greater of the average of the monthly payments for the last three months or the last twelve months, see 401(k) Collection Policy Art. V, ¶ 9, ECF No. 24-10, plaintiff did not provide reports for the prior twelve months. Therefore, the Court confines its analysis to the last three months for which

remittance reports were submitted: August through October 2019. The Court's calculations are as follows:

| Month | 401(k) Salary Deferral Projections Three Month Average Calculation | | |
|---|---|---|---|
| | Receipt Number | Period Total | Monthly Total |
| August 2019 | 633249 | 165.60 | $480.24 |
| | 633253 | 33.12 | |
| | 633263 | 124.20 | |
| | 633271 | 157.32 | |
| September 2019 | 638307 | 161.46 | $1,038.28 |
| | 638309 | 115.92 | |
| | 666900 | 161.46 | |
| | 638310 | 144.90 | |
| | 638313 | 132.48 | |
| | 638314 | 16.56 | |
| | 638316 | 34.78 | |
| | 666926 | 154.80 | |
| | 638315 | 115.92 | |
| October 2019 | 666918 | 131.22 | $436.72 |
| | 666928 | 150.70 | |
| | 683615 | 154.80 | |
| | | Three Month Total | 1955.24 |
| | | Three Month Average | 651.75 |

The monthly average for the last three months for which remittance reports were provided is $651.75. The Court applies this amount to the delinquency time periods identified by plaintiffs, the period ending November 18, 2019 through December 30, 2019, and the period ending February 3, 2020 through May 11, 2021. Neither of these periods can be neatly divided into a whole number of months. The first period is composed of 7 weeks and the second period is composed of 67 weeks.[17] The Court pro-rates the monthly average of $651.75 to first determine

_____

[17] The periods at issue are the periods *ending* November 18, 2019 through December 30, 2019, and the period ending February 3, 2020 through May 11, 2021. For this reason, although there are only six weeks between November 18, 2019 and December 30, 2019 and sixty-six weeks between February 3, 2020 and May 11, 2021, an additional week must be added to each period.

the amount due per week and then applies that amount to each period at issue. Pro-rated per week, the monthly average becomes 150.40 (651.75 x 12, divided by 52). Using this number, plaintiffs are due $1,052.80 (150.40 x 7) for the period ending November 18, 2019 through the period ending December 30, 2019 and $10,076.80 (150.40 x 67) for the period ending February 3, 2020 through May 11, 2020. Therefore, plaintiffs should be awarded a total of $11,129.60 in projected 401(k) Salary Deferrals.

The Court determines interest due on this amount at a rate of 10% per annum. 401(k) Collection Policy Art. III.B, ¶ 2, ECF 24-10. The Court first determines a reasonable midpoint during the delinquency period. Here, the period of delinquency extends from November 25, 2019 through May 17, 2021,[18] and the Court finds August 21, 2020 to be a reasonable midpoint. The interest due between August 21, 2020 and the date of this Report is $1,323.70.[19] This amount will increase by $3.05 each day until the entry of judgment.

Plaintiffs are also entitled to liquidated damages on the projected amount of 20%. 401(k) Collection Policy Art. III.B, ¶ 2, ECF 24-10. The liquidated damages total $2,225.92 ($11,129.60 x. 20%).

Plaintiffs also seek lost earnings on the projected 401(k) Salary Deferrals. Pls.' Mot. 19. The Court relies on the DOL VFCP Calculator, as described above, and calculates lost earnings of $402.87 from the reasonable midpoint of August 21, 2020. See Philip Gen. Constr., 2007 WL 3124612, at *12.

---

[18] These dates are the due dates for the first and last weekly delinquency periods. See 401(k) Interest and Liquidated Damages Calculations, ECF No. 24-15.

[19] 11,129.60 (the projected 401(k) delinquency) x 10%, divided by 365, multiplied by the number of days between August 21, 2020 and the date of this Report.

**5. 2015 Audit Findings**

Pursuant to the CBA, the Local 1 Funds conducted an audit of J&A for the period January 1 through December 31, 2015 (the "Audit"). Compl. ¶ 24; Moss Decl. ¶ 4, ECF No. 26; Audit Report, ECF No. 26-1. The auditor, Marshall & Moss, found that J&A failed to remit contributions totaling $2,772.78 for the period January 1 through December 31, 2015. Compl. ¶ 25; Moss Decl. ¶ 16; Audit Report, ECF No. 26-1.

The auditor reviewed defendants' payroll records, general ledgers, and quarterly tax returns to determine the total number of hours worked by employees of J&A during the period from January 1 to December 31, 2015. Moss. Decl ¶ 10. The auditor determined that J&A failed to remit contributions to the Local 1 Funds for 117 hours worked by its employees. Id. ¶ 11. The auditor then multiplied the total hours by the applicable contribution rates to calculate the total amount owed. Id. ¶¶12-14.

Having reviewed the Audit Report and finding it accurate, it is respectfully recommended that the Court should award plaintiffs Local 1 Funds $2,772.78 in delinquent contributions for the period January 1 through December 31, 2015.

The interest on this delinquency is calculated as one twelfth of ten percent monthly, which is $96.53. Id. Plaintiffs repeated this calculation for every year at the applicable interest rate, resulting in total interest of $2,166.89 for the 2015 delinquencies. Moss Decl. ¶16. Further, liquidated damages of 20% on the amounts due to the Fund for the period of the 2015 audit total $486.07. Id. ¶ 20.

Accordingly, plaintiff Local 1 Funds should be awarded: (1) for the period January 2019 through November 2019 (a) $35,547.36 in unremitted contributions for the period January 2019 through November 2019; (b) $8,084.20 in interest on unpaid contributions plus $9.74 for every

day between the date of this Report and the entry of judgment; (c) $7,109.47 in liquidated

damages; and (d) $1,100 in administrative fees; (2) for the period February 2020 through April

2021 (a) $28,505.85 in estimated contributions; (b) $2,928.75 in interest plus 7.81 each day until

the entry of final judgment; (c) $5,701.17 in liquidated damages; and (d) $1,500 in

administrative fees; (3) regarding 401(k) Salary Deferrals for the period March 11, 2019 through

November 11, 2019, (a) $7,493.95 in unpaid deferrals; (b) interest of $1,707.65 plus $2.05 each

day until the entry of judgment; (c) $1,498.79 in liquidated damages; and (d) lost earnings of

$683.49; (4) regarding estimated 401(k) Salary Deferrals for the periods November 18, 2019

through December 30, 2019 and February 3, 2020 through May 11, 2019, (a) $11,129.60 in

projected 401(k) Salary Deferrals; (b) interest on estimated deferrals of $1,323.70 plus $3.05

each day until the entry of judgment; (c) liquidated damages of $2,225.92; and (d) lost earnings

of $402.87; (5) for the audit period of January 1, 2015 through December 31, 2015 (a) $2,772.78

in delinquent contributions; (b) interest of $2,166.89; and (c) liquidated damages of 486.07.


## B. PPNPF

## 1. Unpaid Contributions

Plaintiff PPNPF seeks to recover $6,044.34 in unpaid contributions owed by

defendant J&A for the period April through November 2019. Pls.' Mem. 20. In support of this

request, plaintiffs point to the declaration of PPNPF administrator Toni C. Inscoe, Inscoe Decl.,

ECF No. 25, a spreadsheet detailing their calculations, see Delinquency Calculations, ECF 25-4,

remittance reports, and contribution calculations, which include notations regarding the hours for

which payment is owed for April through November 2019, see ECF Nos. 25-5 through 25-12.

After reviewing both the records provided and plaintiffs' calculations, the Court identified

several inconsistencies between plaintiffs' request and the data in the remittance reports. For multiple months, plaintiff claims its members worked more hours than reflected in the remittance reports. The following chart compares the amount of unpaid hours and contribution amounts claimed by plaintiff against the amount of unpaid hours and contribution amounts supported by the records:

| PPNPF Unpaid Contribution Calculations April 2019 – November 2019 | | | | | | |
|---|---|---|---|---|---|---|
| | Plaintiffs' Request | | | Supported by Records | | |
| Period | Unpaid Hours | Rate | Amount Due | Unpaid Hours | Rate | Amount Due |
| April 2019 | 162.4 | 6.55 | 1,063.72 | 156.8 | 6.55 | 1,027.04 |
| May 2019 | 158.2 | 6.55 | 1,036.21 | 153.4 | 6.55 | 1,004.77 |
| June 2019 | 120 | 6.55 | 786.00 | 119.6 | 6.55 | 783.38 |
| July 2019 | 137 | 6.55 | 897.35 | 137 | 6.55 | 897.35 |
| August 2019 | 108 | 6.55 | 707.40 | 108 | 6.55 | 707.40 |
| September 2019 | 144 | 6.55 | 943.20 | 144 | 6.55 | 943.20 |
| October 2019 | 56.8 | 6.55 | 372.04 | 56 | 6.55 | 366.80 |
| November 2019 | 36.4 | 6.55 | 238.42 | 36 | 6.55 | 235.80 |
| | | | | | | |
| | Requested Total | | $6,044.34 | Supported Total | | $5,965.74 |

Accordingly, plaintiff PPNPF should be awarded $5,965.74 in delinquent contributions for the period April 2019 through November 2019.

Plaintiff PPNPF also requests interest on the delinquent contributions. The Collection Policy provides for interest on unpaid contributions of 12%. PPNPF Collection Policy ¶ 9, ECF No. 25-3. As discussed previously, the Court will calculate the interest due though the date of this Report by relying on a reasonable midpoint. The first unpaid contribution was due on May 20, 2019 and the last was due on December 20, 2019. Id. ¶ 1 (explaining that payments are due on the 20th day following the end of the month reported). The Court finds September 4, 2019 to

be a reasonable midpoint. The interest due is therefore $1,540.56.[20] This amount will increase by $1.96 per day until the entry of final judgment

The collection policy also provides for liquidated damages of 10%. Id. ¶ 9. Accordingly, plaintiff PPNPF should be awarded $596.57 in liquidated damages for the period April 2019 through November 2019.

**2. Estimated Contributions for February 2020 through April 2021**

Plaintiff PPNPF also seeks estimated contributions for the period February 2020 through April 2021. Pls. Mem. 20-21. Remittance reports were not provided for this time period. In pertinent part, the parties' Trust Agreement provides that:

> Where an Employer is two or more months delinquent in making the contributions required on behalf of his Employees and has failed to submit regular documents showing the Employees who worked for the Employer and the hours worked, the Trustees may project as the amount of the delinquency (a) the average of the monthly payments actually made by the Employer for the last three (3) months for which the payments were made, or (b) the average of monthly payments made by the Employer for the last twelve (12) months for which payments were made, or (c) the average of the monthly payment documented by the remittance reports submitted by the Employer without payments for the last three (3) months, or (d) the average of the monthly payment documented by the remittance reports submitted by the Employer without payment for the last twelve (12) months, or (e) the average monthly contributions determined by (i) certified payroll records required under any applicable federal, state or local law, or (ii) an audit of the payroll and wage records of an Employer conducted under Section 4 of this Article, or (f) the number of Employees employed by the Employer under the Collective Bargaining Agreement as determined by the Union multiplied by the contribution rate multiplied by the workweek established in the Collective Bargaining Agreement.

PPNPF Tr. Agreement, Art. VI, § 6, ECF No. 25-1.

Here, plaintiffs seek $2,044.91 per month for all months that J&A failed to provide remittance reports to PPNPF, for a total of $30,673.65. Inscoe Decl. ¶ 32. Plaintiffs calculated this amount by taking the average of the payments remitted for January 2019, February 2019,

---

[20] This amount was calculated by multiplying the delinquent contribution amount ($5,965.74) by 12%, dividing by 365 and then multiplying by the number of days between September 4, 2019 and the date of this Report.

and March 2019, and multiplying by fifteen (February 2020 through April 2021). Id. However, plaintiffs fail to provide remittance reports or other support for these numbers, relying solely on the statements in the Inscoe declaration. In light of the many discrepancies discussed above, the Court is unable to rely on plaintiffs' statement of the payments for January 2019 through March 2019. The Court instead relies on the "average of the monthly payment documented by the remittance reports submitted by the Employer without payments for the last three (3) months," an alternate method of projection specified in the parties' Trust Agreement. PPNPF Tr. Agreement, Art. VI, § 6, ECF No. 25-1. The Court finds this method appropriate because the calculations are based on documents that are provided.[21]

The last three months documented in the remittance reports provided are September 2019, October 2019, and November 2019. See ECF Nos. 25-10 through 25-12. The average of the documented monthly payments due for those three months is $515.27.[22] This amounts to $7,729.05 when multiplied by fifteen (February 2020 through April 2021). Therefore, plaintiff PPNPF should be awarded $7,729.05 as estimated contributions for the period February 2020 through April 2021.

The Court calculates interest on the projected contributions from a reasonable midpoint, in this case October 19, 2020.[23] Interest accrues at 12%. PPNPF Collection Policy ¶ 9, ECF No. 25-3. Therefore, the interest due through the date of this Report is $952.50.[24] Interest will continue to accrue at the rate of $2.54 per day until the date of judgment.

---

[21] The Court notes that the numbers plaintiffs recite are substantially higher than the amounts stated in the remittance reports provided in support of plaintiffs' request for delinquent contributions.

[22] 943.20 (Sept. 2019) + 366.80 (Oct. 2019) + 235.80 (Nov. 2019) = 1,545.80. 1,545.80 divided by 3 = $515.27

[23] The estimated contribution for February 2020 was due on March 20, 2020 and the estimated contribution for April 2021 was due on May 20, 2021. See PPNPF Collection Policy ¶ 1, ECF No. 25-3.

[24] (7,729.05 x 12%)/365 x the number of days between October 19, 2020 and the date of this Report.

Plaintiffs are also entitled to liquidated damages of 10% of the projected contribution. Id. Therefore, plaintiffs should be awarded $772.91 in liquidated damages ($7,729.05 x 10%).

Accordingly, plaintiff PPNPF should be awarded: (a) $5,965.74 in delinquent contributions; $1,540.56 in interest on the delinquent contributions which will increase by $1.96 per day until the entry of judgment; and liquidated damages on the delinquent contributions of $596.57; and (b) $7,729.05 in estimated contributions; $952.50 in interest on the estimated contributions which will increase by $2.54 per day until the entry of judgment; and liquidated damages on the estimated contributions of $772.91.

## C. ITF

### 1. Unpaid Contributions for April 2019 through November 2019

Plaintiffs request unpaid contributions to plaintiff ITF for the period April 2019 through November 2019. Pls. Mem. 21. As explained above, the Court cannot rely on plaintiffs' calculations for this period. Therefore, the Court's calculations are detailed in the following table:

| ITF Unpaid Contribution Calculations April 2019 – November 2019 | | | | | | |
|---|---|---|---|---|---|---|
| | Plaintiffs' Request | | | Supported by Records | | |
| Period | Unpaid Hours | Rate | Amount Due | Unpaid Hours | Rate | Amount Due |
| April 2019 | 162.4 | .10 | 16.24 | 156.8 | .10 | 15.60 |
| May 2019 | 158.2 | .10 | 15.82 | 153.4 | .10 | 15.34 |
| June 2019 | 120 | .10 | 12.00 | 119.6 | .10 | 11.96 |
| July 2019 | 137 | .10 | 13.70 | 137 | .10 | 13.70 |
| August 2019 | 108 | .10 | 10.80 | 108 | .10 | 10.80 |
| September 2019 | 144 | .10 | 14.40 | 144 | .10 | 14.40 |
| October 2019 | 56.8 | .10 | 5.68 | 56 | .10 | 5.60 |
| November 2019 | 36.4 | .10 | 3.64 | 36 | .10 | 3.60 |
| | | | | | | |
| | Requested Total | | $92.28 | Supported Total | | $91 |

Plaintiff ITF should be awarded $91 in delinquent contributions for the period April 2019 through November 2019. Interest on this amount, calculated at 12% per annum, see ITF Collection Policy, § I, ECF No. 25-3; ITF Trust Decl. of Tr., Art. IV, § 6, ECF No. 25-2, from the reasonable midpoint of September 4, 2019 through the date of this report amounts to $23.58.[25] This amount will increase by $0.03 per day until the entry of judgment.

Plaintiff ITF is also entitled to liquidated damages of 20%. ITF Collection Policy, § I, ECF No. 25-3; ITF Trust Decl. of Tr. Art. IV, § 6, ECF No. 25-2. Therefore, plaintiff should be awarded liquidated damages of $18.20.

## 2. Estimated Contributions for February 2020 through April 2021

Plaintiff ITF seeks a projected delinquency of $436.30 for the period February 2020 through April 2021. The ITF Trust Declaration contains projection provisions which are identical to the provisions governing the PPNPF estimated contributions discussed above. Compare ITF Trust Decl. of Tr. Art. IV, § 7, ECF No. 25-2 with PPNPF Tr. Agreement, Art. VI, § 6, ECF No. 25-1. As with the PPNPF estimated contributions, plaintiffs rely on the months of January 2019 through March 2019 to determine the average monthly contribution and then use that average to calculate the estimated contributions due for February 2020 through April 2021. See Inscoe Decl. ¶ 33. For the reasons stated above, the Court declines to accept this calculation method and independently calculates the estimated contributions due to plaintiff PPNPF.

---

[25] The delinquent amount ($91) x 12%, divided by 365, then multiplied by the number of days between September 4, 2019 and the date of this Report.

The average monthly payment for the last three months for which remittance reports were provided is $7.87.[26] Therefore, plaintiff ITF should recover $118.05 ($7.87 x 15) in estimated contributions for the period February 2020 through April 2021.

The interest due on this amount is calculated at the rate of 12% per annum. ITF Trust Decl. of Tr. Art. IV, § 6, ECF No. 25-2. As determined from the reasonable midpoint of October 19, 2020 through the date of this Report, ITF should be awarded $15 in interest.[27] This amount will increase by $0.04 each day until the entry of final judgment.

Plaintiff should also be awarded liquidated damages of 20%, see ITF Collection Policy, § I, ECF No. 25-3; ITF Trust Decl. of Tr. Art. IV, § 6, ECF No. 25-2, which total $23.61.

Accordingly, plaintiff ITF should be awarded: (a) $91 in delinquent contributions; $23.58 in interest on the delinquent contributions which will increase by $0.03 per day until the entry of judgment; and liquidated damages on the delinquent contributions of $18.20; and (b) $118.05 in estimated contributions; $15 in interest on the estimated contributions which will increase by $0.04 per day until the entry of judgment; and liquidated damages on the estimated contributions of $23.61.

### D. Post-Judgment Interest

Plaintiffs also request an award of post-judgment interest. Pls.' Mem. 5. "The award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." Trustees of the Local 7 Tile Indus. Welfare Fund v. Richard's Improvement Bldg. Inc., No. 15-CV-3898(JS)(AKT), 2016 WL 6110455, at *11 (E.D.N.Y. Aug. 1, 2016) (internal quotation

---

[26] 14.40 (Sept. 2019) + 5.60 (Oct. 2019) + 3.60 (Nov. 2019) = 23.60. 23.60 divided by 3 = 7.87.
[27] Interest is calculated as follows: $118.05 x 12%, divided by 365, multiplied by the number of days between October 19, 2020 and the date of this Report.

marks omitted) (quoting <u>Lewis v. Whelan</u>, 99 F.3d 542, 545 (2d Cir. 1996)) <u>Report and Recommendation adopted by</u> 2016 WL 4764909 (E.D.N.Y. Spt. 12, 2016). The rate of post-judgment interest in an ERISA action is set forth in 28 U.S.C. § 1961(a). <u>Id.</u> Accordingly, I recommend that plaintiffs should be awarded post-judgment interest in accordance with the provisions of 28 U.S.C. § 1961(a).

### III. Personal Liability of Vito LaBarbera

Plaintiffs further assert that defendant LaBarbera should be held personally liable as a fiduciary of the Funds. Compl. ¶¶ 47-61. Under ERISA, any person who is a fiduciary "shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary." 29 U.S.C. § 1109(a). "In order to establish that a person is personally liable as a fiduciary of the plan, plaintiffs must prove "both that (1) the unpaid contributions were plan assets and (2) [the individual] exercised a level of control over those assets sufficient to make him a fiduciary." <u>Marble Unique Corp.</u>, 2011 WL 5401987, at *10 (internal quotation marks omitted) (quoting <u>In re Halpin</u>, 566 F.3d 286, 289 (2d Cir. 2009)).

"[I]n the absence of provisions to the contrary in the relevant plan documents, unpaid contributions are not assets of the plan." <u>Id.</u> (citing <u>In re Halpin</u>, 566 F.3d at 287); <u>see also</u> <u>Philip Gen. Const.</u>, 2007 WL 3124612, at *5 ("Delinquent contributions to a benefit fund are fund assets if so defined in the agreement creating the fund."). Here, the trust agreements for the Local 1 Funds and the National Funds provide that "the assets of that plan include 'sums of money that have been or will be paid or which are due and owing to the Fund by the Employees as required by the Collective Bargaining Agreements." <u>See</u> Saraceni Decl. ¶ 8; Welfare Fund Agreement,

Art. II, § 2, ECF No. 24-4; ASB Fund Agreement, Art. II § 2, ECF No. 24-5; Vacation Fund

Agreement, at Art. II § 2, ECF No. 24-6; Education Fund Agreement, Art. II, § 2, ECF No. 24-7;

401k Agreement, Art. II § 4, ECF No. 24-8; Inscoe Decl. ¶ 6; 2020 PPNPF Tr. Agreement, Art.

II § 2, ECF No. 25-1; ITF Trust Decl. of Tr., Art. II § 2, ECF No. 25-2. Thus, these agreements,

which are incorporated by reference in the CBA, establish that "due but unpaid contributions" to

the Local 1 Funds and National Funds "constitute plan assets." <u>Sheet Metal Workers' Nat.</u>

<u>Pension Fund v. Cent. Design Sys., Inc.</u>, No. 08-CV-968(ADS)(AKT), 2010 WL 3522810, at *4

(E.D.N.Y. May 25, 2010), <u>Report and Recommendation</u> adopted by 2010 WL 3522942

(E.D.N.Y. Sept. 2, 2010).

　　　　Having found that the unpaid contributions constitute plan assets, I now turn to whether

LaBarbera exercised the level of control necessary to qualify as a fiduciary. To make this

determination, courts within the Second Circuit evaluate several factors, particularly whether the

"defendant was responsible for authorizing and making payments to an employee benefit plan."

<u>Philip Gen. Const.</u>, 2007 WL 3124612, at *5 (quoting <u>Pension Benefit Guar. Corp. v. Solmsen</u>,

671 F.Supp. 938, 944 (E.D.N.Y. 1987)). Here, I accept as true plaintiffs' uncontested allegations

that LaBarbera "exercised operational control of J&A" and was "responsible for deciding

whether to use assets in the possession of J&A to pay contributions to the Funds." Compl. ¶¶ 50-

52. I also accept as true the allegation that LaBarbera "caused J&A to use assets in its possession

for purposes other than making contributions to the Funds." <u>Id.</u> ¶ 53. Based on these allegations,

I find that Plaintiffs have stated sufficient facts to support the inference that LaBarbera was a

plan fiduciary as to the Funds. <u>See Solmsen,</u> 671 F. Supp. at 946. For these reasons, I

respectfully recommend that LaBarbera should be held jointly and severally liable, along with

J&A, for the unpaid contributions to the Funds and the interest due on those amounts. <u>See Mason</u>

Tenders Dist. Council Welfare Fund v. Precise Brick Inc., No. 08 Civ. 8373(SHS), 2009 WL 1675399, at *2 (S.D.N.Y. June 15, 2009) (citing In re WorldCom, Inc. ERISA Litig., 339 F. Supp. 2d 561, 568 (S.D.N.Y. 2004)).

## IV. Attorney's Fees and Costs

### 1. Attorney's Fees

Plaintiffs seek attorney's fees of $20,549.40 and costs of $583.77. Grancio Decl. ¶¶ 19-20, ECF No. 27. Pursuant to ERISA, in pertinent part, when "a judgment in favor of the plan is awarded, the court shall award the plan…reasonable attorney's fees and costs of the action, to be paid by the defendant." 29 U.S.C. § 1132(g)(2)(D). The parties' collection policies and trust agreements also provide for an award of attorney's fees in the event of litigation. See e.g., Collection Policy, Art. I, ¶ 4, ECF No. 24-9; 401(k) Collection Policy, Art. I., ¶ 4, ECF No. 24-10; Welfare Fund Agreement, Art VI, § 6, ECF No. 24-4; ASB Fund Agreement, Art VI, § 6, ECF No. 24-5; Vacation Fund Agreement, Art VI, § 6, ECF No. 24-6; Education Fund Agreement, Art VI, § 6, ECF No. 24-7; 401(k) Agreement, Art VI, § 6, ECF No. 24-8; PPNPF Agreement, Art VI, § 5, ECF No. 25-1; ITF Trust Decl. of Tr., Art VI, § 6, ECF No. 25-2; PPNPF Collection Policy ¶ 9, ECF No. 25-3.

Although determining "what constitutes a reasonable fee" falls within the district court's discretion, "the product of a reasonable hourly rate and the reasonable number of hours required by the case – creates a 'presumptively reasonable fee.'" Millea v. Metro-North R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (first quoting LeBlanc-Stenberg v. Fletcher, 143 F.3d 748, 758 (2d Cir. 1998); and then quoting Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany, 522 F.3d 182, 183 (2d Cir. 2008) [hereinafter Arbor Hill)). The Second Circuit counsels

that this "lodestar" amount must be the starting point and failure to rely on it at the outset is legal error. Id.

The Court determines an attorney's reasonable rate by examining "similar rates in the district in which the court sits." Retirement Fund of Local 1482 Paint and Allied Prods. Mfrs. v. N. Adhesives, Inc., No. 19-CV-5609(MKB)(RER), 2020 WL 6370060, at *4 (E.D.N.Y. May 27, 2020) (citing Trs. of the Empire State Carpenters Annuity, Apprenticeship, Labor Mgmt. Cooperation, Pension and Welfare Funds v. Lynnview Constr. Corp., No. 12-CV-5644(ADS)(AKT), 2013 WL 4852312, at * 10 (E.D.N.Y. Sept. 10, 2013)) Report and Recommendation adopted by 2020 WL 5587271 (E.D.N.Y. Sept. 17, 2020). "A reasonable hourly rate is 'the rate a paying client would be willing to pay.'" McLaughlin v. IDT Energy, No. 14-CV-4107(ENV)(RML), 2018 WL 3642627, at *16 (E.D.N.Y. July 30, 2018) (quoting Arbor Hill, 522 F.3d at 190)) Report and Recommendation adopted by Order, ECF No. 137 (E.D.N.Y. Oct. 18, 2018). The Court then looks to its own experience, knowledge about the case, and the parties' arguments to evaluate whether the number of hours spent working on the matter were reasonable. N. Adhesives, Inc., 2020 WL 6370060, at *4 (citing Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992)).

In the Eastern District of New York, reasonable rates for partners range from "$300 to $450 per hour, $200 to $300 per hour for senior associates, $100 to $200 per hour for junior associates, and $70 to $100 per hour for paralegals." Id. (citing Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. D&A Bus Co., Inc., 270 F. Supp. 3d 593, 618-19 (E.D.N.Y. 2017)); see also Kaufman v. Equifax Info. Servs., LLC, No. 18-CV-7420(BMC), 2019 WL 3997461, at *4 (E.D.N.Y. Aug. 22, 2019) (quoting LG Cap. Funding, LLC v. 5Barz Int'l, Inc., 16-CV-2752(KAM)(JO), 2019 WL 3082478, at *2 (E.D.N.Y. July 15, 2019)). The Court must

also look to counsel's experience and qualifications. <u>Trs. of the Pavers * Road Builders Dist. Council Welfare, Pension, Annuity & Apprenticeship & Skill Improvement & Safety Funds v. Kel- Tech Constr. Inc.</u>, No. 19-CV-2487(ENV)(SJB), 2020 WL 6051097, at *8 (E.D.N.Y. Aug. 25, 2020) <u>Report and Recommendation</u> <u>adopted by</u> Order (Oct. 13, 2020). In the ERISA default context, Courts also consider the "relative simplicity" of such cases and therefore attorney's fees trend toward the lower end of the spectrum. <u>Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs, Local 15, 15A, 15C & 15 D, AFL-CIO v. Costal Env't Grp.</u> No. 18-CV-5791(LDH)(SJB), 2019 WL 5693916, at *10 (Aug. 30, 2019) <u>Report and Recommendation</u> <u>adopted by</u> Order (E.D.N.Y. Mar. 31, 2020).

Plaintiffs' counsel, Adrianna Grancio, states her billing rate is $285 and states the three legal assistants who worked on this matter with her bill at $145 per hour. Grancio Decl. ¶¶ 16-17. Ms. Grancio is a 2016 Graduate of St. John's University School of Law with a primary practice in ERISA litigation. <u>Id.</u> ¶ 17. However, Ms. Grancio's declaration does not state how long she has practiced in the area of ERISA or how long she has been with her current firm. The Court is also mindful that the original motion for a default judgment in this case was filed in October 2020. ECF Nos. 12-17. Given the nature of this action and the Court's limited knowledge about Ms. Grancio's experience in this area, the Court recommends a reduction in her hourly rate to $250. This rate is in line with awards in other ERISA cases involving Ms. Grancio. <u>See</u> <u>e.g.</u> <u>Kel-Tech Constr Inc.</u>, 2020 WL 6051097, at *9 (finding a rate of $250 reasonable for Ms. Grancio in August 2020); <u>Trs. of the Pavers & Road Builders Dist. Council Welfare, Pension, Annuity, & Apprenticeship, Skill Improvement & Safety Funds v. Peduto Constr. Corp.</u>, No. 19-CV-2306(KAM)(LB), 2020 WL 9814096, at *7 (E.D.N.Y. Feb. 27, 2020) <u>Report and Recommendation</u> <u>adopted by</u> Order (Mar. 27, 2020). The Court also finds that the $145 per

hour rate requested for the legal assistants who worked on this matter is outside the range for comparable work in this district. See e.g., N. Adhesives, Inc., 2020 WL 6370060, at *4 (citing D & A Bus. Co., 270 F. Supp. 3d at 593) (stating that the range for paralegals is $70 to $100 per hour). Therefore, I recommend that this rate be reduced to $100 per hour, an amount in line with prior awards in this district in cases involving plaintiffs' counsel's firm. See Trs. of the Northeast Carpenters Health, Pension, Annuity, Apprenticeship & Labor-Mgmt. Cooperation Funds v. Tiki Indus., Inc., No. 20-CV-492(DRH)(AKT), 2020 WL 4927430, at *3 (E.D.N.Y. Aug. 21, 2020). The following chart applies the revised rates to the number of hours billed for each member of plaintiffs' counsels' staff:

| Attorney's Fees | | | |
|---|---|---|---|
| | | | |
| **Attorney** | **Hours[28]** | **Rate** | **Total** |
| Adrianna Grancio | 61.368 | $250/per hour | 15,342 |
| | | | |
| **Legal Assistant** | **Hours** | **Rate** | **Total** |
| Eva Codispoti | 1.8 | | 180 |
| Emily Barasmain | .4 | $100/per hour | 40 |
| Julia Burstein | 18.9 | | 1,890 |
| | | | |
| Total Hours | 82.47[29] | Total Due | $17,452 |

However, the Court must still evaluate the reasonableness of the total number of hours spent working on this matter. Plaintiffs' counsel reports that work on this case totaled 82.47 hours. Pls.' Mem. 24; Grancio Decl. ¶19. This number far exceeds the amount of hours billed in recent ERISA default judgment cases in this District. See e.g., Trs. of Bldg. Trades Educ. Benefit Fund v. Romero Elec. LLC, No. 19-CV-3515(DRH)(AYS), 2021 WL 3604811, at *9 (E.D.N.Y.

---

[28] The Court calculated this number by referencing counsel's billing records, ECF No. 27-6, and adding up the number of hours assigned to each staff member.
[29] The Court rounded to two decimal places. Based upon a review of counsel's billing records, ECF No. 27-6, it appears counsel used the same rounding methodology.

July 19, 2021) (finding 26.1 hours reasonable in an ERISA default action) Report and Recommendation adopted by 2021 WL 3603613 (E.D.N.Y. Aug. 13, 2021); Trs. of Bldg. Trades Educ. Benefit Fund v. Culver Elec. LLC, No. 17-CV-3448(DRH)(ST), 2021 WL 1911122, at *4 (E.D.N.Y. Apr. 19, 2021) (finding 10.5 hours of work reasonable in an ERISA default judgment case) Report and Recommendation adopted by 2021 WL 1906486 (E.D.N.Y. May 12, 2021); Trs of the Plumbers Local Union No. 1 Welfare Fund, Additional Sec. Benefit Fund, Vacation& Holiday Fund, Trade Educ. Fund, 401(k) Savings Plan v. Temperini Mechanical Inc., No. 18-CV-2596(AMD)(LB), 2020 WL 571680, at * 6 (E.D.N.Y. Jan. 13, 2020) (finding 68.5 hours reasonable in an ERISA default action handled by plaintiffs' counsel) Report and Recommendation adopted by 2020 WL 565410 (E.D.N.Y. Feb 5, 2020). Further, the Court is aware that in their initial motion for a default judgment, plaintiffs sought attorney's fees for only 44.95 hours of work. Oct 12, 2020 Grancio Decl. ¶ 19, ECF No. 16; History Bill, ECF No. 16-6. The Court's directive that plaintiffs file an amended motion correcting the deficiencies in their first submission has somehow resulted in a nearly two-fold increase in the number of hours spent working on this matter.

A reduction of an attorney's fees request is appropriate when the requesting party fails to justify "the excessive amount of time spent" on the matter. Gesualdi v. Seacoast Petroleum Prods. Inc., 97 F. Supp. 3d 87, 107 (E.D.N.Y. 2015). Similarly, the Court should "exclude excessive, redundant or otherwise unnecessary hours" when reviewing a fee application. Universal Elec. Corp., 970 F. Supp. at 129 (quoting Quarantino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999)). Submission of "careless or inaccurate work" is also an appropriate reason to reduce fees. Id.; see also, Seacoast Petroleum Prods., 97 F. Supp. 3d at 107 (reducing attorney's fees when a party's submission contained multiple errors). Rather than deducting hours from the

total amount of time an attorney claims to have spent working on a matter, Courts apply a percentage reduction in attorney's fees in response to excessive fee requests and careless errors. Seacoast Petroleum Prods., 97 F. Supp. 3d at 108 (collecting cases).

       The Court should reduce the attorney's fees to be awarded here based on the litany of errors in plaintiffs' submissions and the unjustified amount of time that counsel spent working on this matter. After the filing of plaintiffs' original motion, the Court alerted plaintiffs to several discrepancies. See Electronic Order dated May 7, 2021. The Court's Order stated that:

> The numbers included in plaintiffs' calculation spreadsheet…differ from those provided in remittance reports submitted by defendant J&A. Further, although plaintiffs' memorandum of law and the accompanying affidavits refer to exhibits labeled with letters, none of the exhibits provided are so labeled. These discrepancies make it impossible for the Court to verify the accuracy of the amounts requested.

Id. Plaintiffs responded to the Court's order by acknowledging what they referred to as "clerical errors" and requesting the opportunity to file an amended motion to correct the discrepancies. ECF No. 21. The Court permitted plaintiffs to amend their motion. See Electronic Order dated May 11, 2021. However, as discussed above, plaintiffs' amended motion still contained many errors which complicated the Court's analysis and required the Court to recalculate almost every contribution. Plaintiffs (1) failed to submit remittance reports to fully support the amount sought in delinquent contributions to the Local 1 Funds; (2) relied on incorrect amounts, lacking in record support, to calculate projected delinquencies due to the Local 1 Funds; (3) used incorrect contribution amounts, which conflicted with the records provided, to calculate the total 401(k) contribution delinquency; (4) relied on a weekly, rather than a monthly average, to calculate estimated 401(k) contributions; and (5) submitted inconsistent records to justify an award of delinquent contributions to the PPNPF and the ITF. Any one of these errors alone would have complicated the Court's effort to adjudicate this matter. Taken together, these errors have

required the Court to devote substantial time and energy to what should have been a straightforward motion for a default judgment.

Plaintiffs requested attorney's fees should be reduced by 40% percent in light of the excessive hours billed and the errors described above.[30] See Trs. of Local 7 Tile Indus. Welfare Fund v. Tuscany Tile & Stone, Inc., No. 16-CV-1641(LDH)(LB), 2017 WL 9939039, at *7 (E.D.N.Y. Nov. 13, 2017) (recommending a 40% reduction in attorney's fees in a case where counsel's deficient motion for a default judgment required the filing of a subsequent motion) Report and Recommendation adopted by 2018 WL 1582216 (E.D.N.Y. Mar. 30, 2018); Seacoast Petroleum Prods, 97 F. Supp. 3d at 108 (recommending a 40% reduction in requested attorney's fees because of excessive time spent on the matter and careless errors in submissions to the Court); Trs. of the Plumbers Local Union No. 1 Welfare Fund v. Manhattan Plumbing Corp., No. 08-CV-3036(FB)(RML), 2009 WL 5821676, at *10 (E.D.N.Y. Oct. 8, 2009) Report and Recommendation adopted as modified 2010 WL 456870 (E.D.N.Y. Feb. 3, 2010). Accordingly, I recommend that plaintiffs should be awarded $10,471.20 ($17,452 – ($17,452 x 40%)) in attorney's fees.

**2. Costs**

Plaintiffs request $583.77 in costs, comprised of $400.00 for the filing fee and various other fees for service and postage. Grancio Decl. ¶ 20; History Bill. ERISA expressly provides that a prevailing plaintiff may recover "the costs of the action, to be paid by the defendant." 29 U.S.C. § 1132(g)(2)(D). The costs must be "substantiated and reasonable." N. Adhesives Co., Inc., 2020 WL 6370060, at *5 (citation omitted). Although plaintiffs did not submit a receipt for

---

[30] The Court takes no pleasure in recommending this reduction in fees. However, plaintiffs' counsel must do better work. This misuse of the Court's resources is unacceptable. I direct counsel to bring this Report to the attention of the named partners of the firm.

the filing fee, I take judicial notice of the Court's $400.00 filing fee. See Annuity, Pension, Welfare, Training and Labor Mgmt. Cooperation Tr. Funds v. BKS-NY, LLC, No. 18 Civ. 0256(LDH)(VMS), 2018 WL 4522103, at *12 (E.D.N.Y. Aug. 6, 2018) (taking judicial notice of the $400.00 filing fee) Report and Recommendation adopted by Electronic Order (E.D.N.Y. Sept. 11, 2018). However, plaintiffs have not provided support for the remaining fees. Accordingly, I respectfully recommended that the Court should award plaintiffs solely $400.00 in costs.

## CONCLUSION

For the reasons set forth above, it is respectfully recommended that plaintiffs' motion for a default judgment should be granted. Plaintiffs should be awarded damages against defendants as follows:

- Plaintiff Local 1 Funds should be awarded:

(1) for the period January 2019 through November 2019 (a) $35,547.36 in unremitted contributions for the period January 2019 through November 2019; (b) $8,084.20 in interest on unpaid contributions plus $9.74 for every day between the date of this Report and the entry of judgment; (c) $7,109.47 in liquidated damages; and (d) $1,100 in administrative fees;

(2) for the period February 2020 through April 2021 (a) $28,505.85 in estimated contributions; (b) $2,928.75 in interest plus 7.81 each day until the entry of judgment; (c) $5,701.17 in liquidated damages; and (d) $1,500 in administrative fees;

(3) regarding 401(k) Salary Deferrals for the period March 11, 2019 through November 11, 2019, (a) $7,493.95 in unpaid deferrals; (b) interest of $1,707.65 plus $2.05 each day

until the entry of final judgment; (c) $1,498.79 in liquidated damages; and (d) lost earnings of $683.49;

(4) Regarding estimated 401(k) Salary Deferrals for the periods November 18, 2019 through December 30, 2019 and February 3, 2020 through May 11, 2019, (a) $11,129.60 in projected 401(k) Salary Deferrals; (b) interest on estimated deferrals of $1,323.70 plus $3.05 each day until the entry of judgment; (c) liquidated damages of $2,225.92; and (d) lost earnings of $402.87;

(5) for the audit period of January 1, 2015 through December 31, 2015 (a) $2,772.78 in delinquent contributions; (b) interest of $2,166.89; and (c) liquidated damages of 486.07.

- The PPNPF should be awarded:

(1) for the period April 2019 through November 2019 (a) $5,965.74 in delinquent contributions; (b) interest of $1,540.56 plus $1.96 per day until the entry of final judgment; and (c) liquidated damages of $596.57;

(2) for the period February 2020 through April 2021 (a) $7,729.05 in estimated contributions; (b) interest of $952.50 plus $2.54 per day until the entry of judgment; and (c) liquidated damages of $772.91.

- The ITF should be awarded:

(1) For the period April 2019 through November 2019 (a) $91 in delinquent contributions; (b) interest of $23.58 plus $0.03 per day until the entry of judgment; and (c) liquidated damages of $18.20;

(2) for the period February 2020 through April 2021 (a) $118.05 in estimated contributions; (b) $15 in interest plus $0.04 per day until the entry of judgment; and (c) liquidated damages of $23.61.

- Post-judgment interest in accordance with the provisions of 28 U.S.C. § 1961(a).

- Attorney's fees of $10,471.20 and costs of $400.

Plaintiffs are hereby ordered to serve a copy of this Report upon defendant at its last known address and to file proof of service with the Court forthwith.


## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See FED. R. CIV. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989).

SO ORDERED.

_____/S/_____
LOIS BLOOM
United States Magistrate Judge

Dated: October 28, 2021
      Brooklyn, New York